**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN F. MCGLINCHEY,** | : | **Civil No. 1:19-CV-162** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **LARRY PEPPER, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**<u>MEMORANDUM OPINION</u>**

## I.   <u>Introduction</u>

This is a prisoner civil rights case filed by the *pro se* plaintiff, John McGlinchey, a state inmate incarcerated in the Pennsylvania Department of Corrections ("DOC") at the State Correctional Institution at Somerset. McGlinchey brings his claims pursuant to 42 U.S.C. § 1983, alleging that the defendants—several correctional and medical defendants—violated his Eighth Amendment rights when he was denied or delayed dental care in the prison at SCI Coal Township in 2016 and 2017. McGlinchey also asserts a related state law claim of intentional infliction of emotional distress.

Pending before the court is a motion for summary judgment filed by Larry Pepper, a dentist and oral surgeon who provided consultations to the DOC and who

provided dental care to the plaintiff while he was incarcerated at SCI Coal Township.[1] (Doc. 79). Dr. Pepper contends that he did, in fact, provide dental care to McGlinchey, and thus, McGlinchey has failed to state an Eighth Amendment claim against him.

After a review of the pleadings, and the uncontested facts, we conclude that there is no genuine issue of material fact as to the plaintiff's Eighth Amendment claim against Dr. Pepper. Rather, the record reveals that Dr. Pepper provided medical care to McGlinchey on several occasions, and there is no evidence to show that Dr. Pepper was deliberately indifferent to a serious medical need. Moreover, because we find that this federal civil rights claim fails as a matter of law, we will decline to exercise supplemental jurisdiction over the plaintiff's related state law claim. Accordingly, for the reasons set forth below, we will grant Dr. Pepper's motion for summary judgment.

---

[1] Dr. Pepper is one of nine defendants against whom McGlinchey brought this lawsuit. All defendants except for Dr. Pepper and Dr. Cooper, who has not been served in this matter, have been dismissed. (Doc. 57). Additionally, the First and Fourteenth Amendment claims and a state law negligence claim against Dr. Pepper have been dismissed. (Id.) We note with respect to Dr. Cooper, the plaintiff was directed to file with the Court an accurate mailing address for Dr. Cooper and was warned that the failure to do so would result in the dismissal of Dr. Cooper under Federal Rule of Civil Procedure 4(m). (Doc. 73). Despite this order, the plaintiff has failed to provide an accurate address for Dr. Cooper so that he may be served with the amended complaint. Thus, Dr. Cooper will be dismissed from this case under Rule 4(m).

## II.   **Background**[2]

The allegations in McGlinchey's amended complaint, as they relate to Dr. Pepper, can be simply stated. McGlinchey contends that he was having tooth pain in November of 2016, and that he got a referral to Dr. Pepper to have his tooth extracted. According to McGlinchey, he was supposed to have his tooth extracted on December 27, 2016, but the oral surgeon never showed. Thus, McGlinchey saw Dr. Pepper on January 23, 2017, when Dr. Pepper extracted his abscessed tooth.

The parties then present two starkly contrasting factual narratives regarding this January 23 dental visit, one that is corroborated by record evidence and one that is not. On this score, according to McGlinchey, Dr. Pepper was violent and careless during this tooth extraction. McGlinchey contends that Dr. Pepper forcibly bent his head back and shoved a rubber block into his mouth, even though he was aware that McGlinchey had issues with his neck. McGlinchey then alleges that Dr. Pepper used a needle that was used on another patient to numb his mouth, and that Dr. Pepper started the tooth extraction before McGlinchey's mouth was numb. According to McGlinchey's recollection of the events, Dr. Pepper used his tool "like a weapon." McGlinchey also asserts that Dr. Pepper's violent tooth extraction resulted in a broken jaw and continuing dental problems. Beyond McGlinchey's averments,

---

[2] The background of this Memorandum Opinion is taken from the parties' submissions to the extent that they are supported by the record. (Docs. 79-81, 85, 87).

however, there is not record support for this narrative. Instead, the undisputed facts present a very different scenario.

Dr. Pepper's version of events is quite different. Dr. Pepper is an outside consultant for the DOC and treats inmates at several prisons on a referral basis. He is typically notified of the schedule of inmates to be seen upon his arrival at the prison. Thus, according to Dr. Pepper, he treated McGlinchey at SCI Coal Township on January 23, 2017 when he extracted a tooth. Dr. Pepper noted that the referral indicated that McGlinchey had a problem holding his head back due to an injury. He placed a rubber bite block in McGlinchey's mouth to hold his mouth open and support his jaw, spread a topical anesthetic around the tooth and gums, and injected a local anesthetic. Dr. Pepper asserts that the needle he used for McGlinchey was not used on any other inmate. The tooth was extracted using forceps, and Dr. Pepper noted that McGlinchey appeared to tolerate the procedure well. McGlinchey was already taking anti-inflammatory medication, so he was prescribed an antibiotic and the extraction site was left unsutured to heal.

Following the tooth extraction, McGlinchey was seen by dental on several other occasions. On this score, McGlinchey submitted a sick call on January 24 complaining of bleeding, but this request was cancelled when McGlinchey informed an officer that the bleeding had stopped. (Doc. 81-1, at 14). On January 30, McGlinchey continued to complain of pain at the extraction site, but treatment notes

indicated that the extraction site "appear[ed] to be healing." (Id., at 15). However, on February 7, Dr. Schetroma noted that there appeared to be an improper clot formation at the extraction site, and on February 8, Dr. Schetroma packed the extraction site with gauze. (Id., at 15-16). On February 10, it was noted that McGlinchey was having a hard time opening his mouth, and Dr. Schetroma noted that he may have to be sent off site for an evaluation of his temporomandibular joint ("TMJ"). (Id., at 16). Then at a follow up on February 13, it was noted the extraction site was healing well, and that he was "doing much better" with the extraction site on February 15. (Id., at 17).

A February 21 progress note indicated that McGlinchey was being referred to an oral surgeon for evaluation of his TMJ discomfort. (Id.) Thus, on February 27, McGlinchey was seen again by Dr. Pepper, who recommended that McGlinchey get an X-ray. (Id., at 18). McGlinchey was taken for an X-ray, and a March 7, 2017 progress note indicated a possible bilateral TMJ fracture. (Id., at 19). This note by Dr. Moclock also suggested a consult for a CT. (Id.) The following day, on March 8, 2017, McGlinchey was seen at Geisinger Danville, where it was noted he had a possible mandible fracture. (Id., at 21-22). A CT was ordered, and the findings indicated that "[t]he mandible is intact and anatomically aligned without evidence of fracture. No additional facial fractures are identified." (Id., at 23). On March 24, 2017, McGlinchey followed up with Dr. Moclock, who informed him that there was

no evidence of a jaw fracture, after which the progress notes state that McGlinchey "launched into a tirade" about his dental issues and Dr. Moclock had to ask him to leave. (Id., at 24-25).

McGlinchey did not see Dr. Pepper again until July of 2017. Dr. Schetroma had referred McGlinchey to Dr. Pepper for an evaluation of TMJ on McGlinchey's right side where he was still experiencing pain. (Id., at 27). Dr. Pepper suggested that McGlinchey be sent for an MRI. (Id., at 28). On August 17, 2017, McGlinchey was seen at Geisinger Shamokin Hospital for an MRI. (Id., at 29). It was noted that the imaging was limited due to the lack of open mouth images, and the MRI indicated that there was bilateral articular disc degeneration. (Id.) On September 14, 2017, McGlinchey was evaluated at Allegheny General Hospital for his TMJ pain. (Id., at 31). McGlinchey reported having pain since his "jaw broke" during a January procedure to remove a tooth. (Id.) The doctor who evaluated McGlinchey recommended warm compresses and a soft diet and prescribed him Ibuprofen and a muscle relaxer. (Id.)

McGlinchey was again referred to Dr. Pepper by Dr. Schetroma in December of 2017. (Id., at 32). This referral notes that McGlinchey was experiencing swelling and pain "along the right mandibular area that developed approximately 15 days ago." (Id.) While Dr. Pepper's notes indicated that he was aware McGlinchey had made complaints against him, the doctor continued to see and treat McGlinchey and

recommended an MRI to evaluate McGlinchey's problem. (Id., at 33). Dr. Schetroma referred McGlinchey to Dr. Pepper again in January of 2018 for a tooth extraction, at which time Dr. Pepper indicated that McGlinchey needed an MRI as the opening of his mouth was too limited to extract a tooth. (Id., 34-35). This note also recommended that McGlinchey be sent to an outside oral surgeon so he could be placed under anesthesia so that his mouth could be opened and the teeth could be extracted. (Id., at 35). An MRI in February of 2018 indicated that there was mild degenerative change in each articular disc compared to the August 2017 MRI, but that there was no evidence for disc dislocation in each TMJ. (Id., at 36).

Thus, McGlinchey contends that the tooth extraction performed by Dr. Pepper on January 23, 2017, was performed improperly, violently, and with deliberate indifference to his serious medical needs. He contends that this extraction caused the dental problems that he continued to experience for several years after the extraction. To this end, McGlinchey first made a complaint with the inmate abuse hotline on March 9, 2017, during which he contended that Dr. Pepper "broke his face" during the tooth extraction. (Id., at 42). The DOC then opened an investigation, which consisted of interviews of McGlinchey, Dr. Pepper, an inmate who was also receiving dental work, Butchie Long, and the dental assistant present at the extraction, Ms. Zalinski. The investigation also included a review of the CT scan

which showed no mandibular fracture. Ultimately, the investigation concluded that McGlinchey's claims against Dr. Pepper were unfounded. (Id., at 42-43).

The interview of the dental assistant, Ms. Zalinski, corroborates Dr. Pepper's version of events. (Id., at 54). According to Ms. Zalinski, Dr. Pepper informed McGlinchey that he knew about his neck injury and told him that he would be careful. (Id.) She stated that Dr. Pepper retrieved the needle from the tool tray, placed McGlinchey's head carefully into the headrest, and placed the bite block in McGlinchey's mouth. (Id.) She reported that after Dr. Pepper gave McGlinchey a shot to numb his mouth, she left to retrieve another inmate, and when she returned, Dr. Pepper gave that inmate a shot to numb his mouth using a different needle. (Id.) Dr. Pepper and Ms. Zalinki then returned to McGlinchey, using the appropriate tools in an appropriate fashion, to remove his tooth. (Id.) Ms. Zalinski denied that Dr. Pepper violently pushed McGlinchey's head back, denied that Dr. Pepper used the same needle for both inmates, and denied that Dr. Pepper used his tools in an aggressive manner. (Id.)

McGlinchey filed this action on January 28, 2019 (Doc. 1), and filed an amended complaint on September 30, 2019, which is now the operative pleading in this case. (Doc. 44). This complaint asserted several constitutional claims against an array of correctional and medical defendants. Relevant to the instant motion are an Eighth Amendment claim and a related state law claim of intentional infliction of

emotional distress against Dr. Pepper. McGlinchey contends that Dr. Pepper's actions on January 23, 2017 constituted deliberate indifference to his serious medical needs in violation of the Eighth Amendment.

Dr. Pepper filed the instant motion for summary judgment on June 28, 2021. (Doc. 79). He contends that McGlinchey cannot demonstrate a genuine issue of material fact with respect to his Eighth Amendment claim regarding the tooth extraction. This motion is fully briefed and is ripe for resolution. (Docs. 80, 86, 87). For the reasons that follow, we find that there are no genuine issues of material fact with respect to the Eighth Amendment claim against Dr. Pepper. Accordingly, we will grant Dr. Pepper's motion for summary judgment.

III.   **Discussion**

A. **Motion for Summary Judgment – Standard of Review**

The defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Through summary adjudication, a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., 702 F.Supp.2d 465, 468 (M.D. Pa. 2010). The substantive law

identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id., at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006), accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical

doubt as to the material facts. Id., at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F. Supp. 474, 482 (D.N.J. 1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark New Jersey v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982); see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon

bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, it is emphatically not the province of the court to weigh evidence or assess credibility when passing upon a motion for summary judgment. Rather, in adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, Anderson, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party. Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. Id. Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Anderson, 477 U.S. at 252; see also Big Apple BMW, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.

12

Id. In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted); NAACP v. North Hudson Reg'l Fire & Rescue, 665 F.3d 464, 476 (3d Cir. 2011).

**B.** **The Defendant's Motion will be Granted.**

Here, the defendant's motion argues that there is no genuine issue of material fact with respect to McGlinchey's Eighth Amendment claim against Dr. Pepper. We agree.

At the outset, it is well settled that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Applying these benchmarks, courts have frequently held that, without allegations of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, 2008 WL 144199, at *21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F.Supp.2d 521, 535 (W.D. Pa. 2004).

As to the substance of his claims, McGlinchey faces an exacting burden in advancing an Eighth Amendment claim against this defendant in his individual capacity.[3] To sustain such a claim, he must plead facts that:

> [M]eet two requirements: (1) "the deprivation alleged must be objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994) (quotations marks and citations omitted). In prison condition cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer—the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate medical care in a prison setting, McGlinchey is required to point to evidence that

---

[3] To the extent McGlinchey brings this claim against the defendant in his official capacity, this claim is plainly barred by the Eleventh Amendment and should be dismissed. See e.g., Snider v. Pennsylvania DOC, 505 F.Supp.3d 360, 431 (M.D. Pa. 2020); Cash v. Wetzel, 8 F.Supp.3d 644, 658 (E.D. Pa. 2014); Parker v. Boring, 2016 WL 3381287, at *4 (M.D. Pa. May 19, 2016), report and recommendation adopted, 2016 WL 3227250 (M.D. Pa. June 13, 2016).

demonstrates both (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or by "persistent conduct in the face of resultant pain and risk of permanent injury." White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or even negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000) ("[C]ourts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as

constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. See e.g., Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.'); Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997).

Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received, see e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw, 967 F.Supp. 833, particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his ... care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2)

16

serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." .... [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care.... Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

James, 230 F.App'x. at 197-198 (citations omitted).

In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional medical judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)).

Furthermore, it is well settled that an inmate's dissatisfaction or disagreement with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim.  See Taylor v. Norris, 36 F. App'x 228, 229 (8th Cir. 2002) (deliberate indifference claim failed when it boiled down to a disagreement over recommended treatment for hernias and decision not to schedule a doctor's appointment); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-35 (7th Cir. 1996) (inmate's disagreement with selection of medicine and therapy for sickle cell anemia falls well short of demonstrating deliberate indifference); Sherrer v. Stephen, 50 F.3d 496, 497 (8th Cir. 1994) (inmate's "desire for a replacement joint instead of fusion

17

surgery is merely a disagreement with the course of medical treatment and does not state a constitutional claim"); Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir. 1994) (prison provided escalating level of treatment for inmates' ailments over time, and inmate's disagreement with course of medical treatment was insufficient basis for Eighth Amendment violation); Czajka v. Caspari, 995 F.2d 870, 871 (8th Cir. 1993) (inmate's mere disagreement with doctor's informed decision to delay surgery does not establish Eighth Amendment claim); Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (inmate failed to prove deliberate indifference where his complaints represented nothing more than mere disagreement with course of his medical treatment); Lair v. Oglesby, 859 F.2d 605, 606 (8th Cir. 1988) (disagreement about whether doctor should have prescribed medication does not result in constitutional violation); Martin v. Sargent, 780 F.2d 1334, 1339 (8th Cir. 1985) (inmate failed to state facts indicating doctor deliberately disregarded his medical problem; inmate's disagreement as to proper medical treatment does not give rise to Eighth Amendment violation). Therefore, where a dispute in essence entails no more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference." Gindraw, 967 F.Supp. at 836 (citations omitted).

Applying these legal benchmarks, we conclude that there is no genuine issue of material fact with respect to McGlinchey's Eighth Amendment claim of deliberate indifference against Dr. Pepper. Rather, the record indicates that McGlinchey received substantial medical care for his dental issues, albeit care and treatment which did not fully resolve his jaw pain. McGlinchey had his tooth extracted in January of 2017, and although he claims that Dr. Pepper's extraction was improper, violent, and caused him to break his jaw, the record actually indicates that McGlinchey's jaw was not broken. Ms. Zalinski's interview also corroborated Dr. Pepper's version of events, which appears to have been a routine tooth extraction. McGlinchey also was taken for MRIs, X-rays, and CT scans, some of which were recommended by Dr. Pepper to evaluate his TMJ problems. Moreover, Dr. Pepper continued to evaluate and render medical care to McGlinchey even after McGlinchey filed an abuse complaint against him, which was ultimately determined to be unfounded.

Thus, it appears that McGlinchey is dissatisfied with the level of dental care he received in the prison and through outside medical personnel. However, as we have explained, a disagreement or dissatisfaction with the medical care received does not lend itself to an Eighth Amendment violation. See e.g., Caldwell v. Luzerne Cnty. Corr. Facility Management Employees, 732 F.Supp.2d 458, 472 (M.D. Pa. 2010) (finding no deliberate indifference where the inmate's "claims are clearly over

a dissatisfaction with the results of treatment rather than a denial of treatment itself"). This is particularly so when an inmate has received a substantial amount of medical care. See Stuart v. Lisiak, 645 F. App'x 197, 201 (3d Cir. 2016) (finding no Eighth Amendment violation when it was "clear from the complaint that [the inmate] received substantial medical care"); see also Ham, 269 F. App'x 149; James, 230 F. App'x 195; Gillespie, 182 F. App'x 103; Bronson, 2007 WL 3033865; Gindraw, 967 F.Supp. 833. Here, the record is clear that McGlinchey received substantial medical care in the form of a tooth extraction, X-Rays, MRIs, and CT scans to try identify and evaluate his dental issues. Moreover, and significantly, McGlinchey provides no evidence to show that his ongoing problems were caused by the January 23 tooth extraction by Dr. Pepper. Rather, the uncontested medical test results suggest that McGlinchey experienced degenerative changes in his jaw.

Additionally, while McGlinchey contends that this tooth extraction was performed improperly and painfully, the record indicates that Dr. Pepper properly performed this tooth extraction. Ms. Zalinski's interview during the abuse allegation investigation revealed that Dr. Pepper was careful with the plaintiff's head because he knew McGlinchey had a neck injury; that Dr. Pepper did not use the same needle on two inmates; and that Dr. Pepper properly extracted the tooth with forceps and did not used his tools "as a weapon" as McGlinchey claimed at the time. Indeed, the DOC investigation into the incident determined that McGlinchey's claim of abuse

was unfounded. While McGlinchey claims that Dr. Pepper's tooth extraction resulted in a broken jaw, the record of his CT scan clearly indicates that McGlinchey's jaw was not broken. Further, even if the evidence would support an inference of negligence, a claim of negligent care does not meet the Eighth Amendment's exacting deliberate indifference standard. Accordingly, viewing the evidence in a light favorable to McGlinchey, we find that there are no genuine issues of material fact with respect to McGlinchey's Eighth Amendment claim against Dr. Pepper, and we will grant summary judgment in favor of Dr. Pepper on this claim.

Finally, to the extent that McGlinchey is asserting a claim of intentional infliction of emotional distress against Dr. Pepper, we have found that the federal claim against this defendant fails as a matter of law. As such, the proposed disposition of the plaintiff's federal legal claim against this defendant suggests the appropriate course for the court to follow in addressing any ancillary state law claims that the plaintiff may wish to pursue against this defendant. In a case such as this, where the jurisdiction of the federal court was premised on alleged federal claims which are found to be subject to dismissal, the proper course generally is for "the court [to] decline to exercise supplemental jurisdiction over the plaintiff's state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-... the district court has dismissed all claims over which it has original jurisdiction."); United Mine

Workers v. Gibbs, 383 U.S. 715, 726 (1966) (holding that when federal causes of action are dismissed, federal courts should not separately entertain pendent state claims)." Bronson v. White, 2007 WL 3033865, *13 (M.D. Pa. Oct. 15, 2007) (Caputo, J.) (adopting report and recommendation dismissing ancillary malpractice claim against dentist); see Ham v. Greer, 269 F. App'x 149, 151 (3d Cir. 2008) (citing United Mine Workers, 383 U.S. at 726 and Tully v. Mott Supermkts., Inc., 540 F.2d 187, 196 (3d Cir. 1976).) ("Because the District Court appropriately dismissed [the inmate's] Bivens claims, no independent basis for federal jurisdiction remains"). As the Supreme Court has aptly observed:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers, 383 U.S. at 726 (footnotes omitted).

Here, we have found that McGlinchey's federal claim against Dr. pepper is subject to dismissal. Therefore, in the exercise of our discretion in this district, we should decline to assert supplemental jurisdiction over potential ancillary state law claim in this case where the potential federal claim brought before us failed as a matter of law. Accordingly, we will dismiss the intentional infliction of emotional distress claim lodged against Dr. Pepper.

In any event this state law tort claim fails on its merits given the undisputed facts regarding the level and degree of care afforded to McGlinchey. Under Pennsylvania law, the elements of a claim for intentional infliction of emotional distress are as follows: "(1) the conduct [of the defendant] must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; [and] (4) that distress must be severe." Hoy v. Angelone, 691 A.2d 476, 482 (Pa. Super. Ct. 1997). This claim also requires an allegation of some type of physical injury, harm, or illness related to the distress. Robinson v. Family Dollar, Inc., No. 14-3189, 2015 WL 3400836 (E.D. Pa. May 27, 2015) (citing Corbett v. Morgenstern, 934 F. Supp. 680, 684 (E.D. Pa. 1994)). It is difficult to make out a cognizable claim for intentional infliction of emotional distress, in no small part because "the conduct must be 'so extreme in nature as to go beyond all possible bounds of decency such that it would be regarded as utterly intolerable to civilized society.' " Regan v. Twp. of Lower Merion, 36 F.Supp.2d 245, 251 (E.D. Pa. 1999).

Thus, with respect to claims for intentional infliction of emotional distress, "courts have been chary to allow recovery for a claim of intentional infliction of emotional distress. Only if conduct which is extreme or clearly outrageous is established will a claim be proven." Hoy v. Angelone, 720 A.2d 745, 753-54 (Pa. 1998). Indeed, the Restatement (Second) of Torts instructs that

> It has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional

> distress, or even that this conduct has been characterized by "malice,"
> or a degree of aggravation that would entitle the plaintiff to punitive
> damages for another tort.

Restatement (Second) of Torts § 46, cmt. d; Hoy, 720 A.2d at 754. In keeping with

these restrictive standards, the Pennsylvania Supreme Court has provided examples

of conduct found to state a claim for intentional infliction of emotional distress, and

such examples demonstrate the extraordinary nature of the theory:

> Cases which have found a sufficient basis for a cause of action of
> intentional infliction of emotional distress have had presented only the
> most egregious conduct. See e.g., Papieves v. Lawrence, 437 Pa. 373,
> 263 A.2d 118 (1970)(defendant, after striking and killing plaintiff's son
> with automobile, and after failing to notify authorities or seek medical
> assistance, buried body in a field where discovered two months later
> and returned to parents (recognizing but not adopting section 46));
> Banyas v. Lower Bucks Hospital, 293 Pa.Super. 122, 437 A.2d 1236
> (1981)(defendants intentionally fabricated records to suggest that
> plaintiff had killed a third party which led to plaintiff being indicted for
> homicide); Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265
> (3d. Cir. 1979) (defendant's team physician released to press
> information that plaintiff was suffering from fatal disease, when
> physician knew such information was false).

Hoy, 720 A.2d at 754. See McCullough v. Wellspan York Hosp., No. 1:20-CV-979,

2021 WL 711476, at *4 (M.D. Pa. Feb. 5, 2021), report and recommendation

adopted, No. 1:20-CV-979, 2021 WL 694800 (M.D. Pa. Feb. 23, 2021). In the

instant case, given the on-going treatment afforded to McGlinchey by Dr. Pepper, it

simply cannot be said that the doctor's conduct was so extreme in nature as to go

beyond all possible bounds of decency such that it would be regarded as utterly

intolerable to civilized society. Quite the contrary, Dr. Pepper sought to address

McGlinchey's dental needs through tooth extraction, follow-up care, x-rays, CT scans, MRIs and an on-going course of treatment. While this care may not have successfully alleviated the plaintiff's discomfort it simply cannot be deemed the type of extreme and outrageous behavior that is an essential element of the tort of intentional infliction of emotional distress under Pennsylvania law. Therefore, this claim fails and should be dismissed.

## IV.   **<u>Conclusion</u>**

Accordingly, for the foregoing reasons, the defendant's motion for summary judgment (Docs. 79) will be GRANTED.

An appropriate order follows.

Submitted this 16th day of March 2022.

<u>*S/ Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge